# In the United States Court of Federal Claims

BID PROTEST
No. 17-553C
Filed Under Seal: May 25, 2017
Reissued for Publication: July 10, 2017[*]

| | |
|---|---|
| THE INFORMATICS APPLICATIONS GROUP, INC., ) ) ) | |
| Plaintiff, ) ) | Pre-Award Bid Protest; Judgment Upon the Administrative Record, RCFC 52.1; |
| v. ) ) | Supplementing the Administrative Record; Permanent Injunction. |
| THE UNITED STATES, ) ) | |
| Defendant. ) ) | |

*John Edward McCarthy, Jr.*, Counsel of Record, *Monica Sterling*, Associate, Crowell & Moring LLP, Washington, DC, for plaintiff.

*Jimmy S. McBirney*, Trial Attorney, *Reginald T. Blades, Jr.*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Chad A. Readler*, Acting Assistant Attorney General, Commercial Litigation Branch, United States Department of Justice, Washington, DC, *David R. Smith*, Of Counsel, Associate General Counsel, Office of General Counsel, Defense Health Agency, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

### I. INTRODUCTION

Plaintiff, The Informatics Applications Group, Inc. ("tiag"), brought this pre-award bid protest matter challenging the Defense Health Agency's (the "DHA") decision to exclude tiag's quote from consideration for award of a contract to provide program management and technical

---

[*] This Memorandum Opinion and Order was originally filed under seal on May 25, 2017 (docket entry no. 24). The parties were given an opportunity to advise the Court, by June 26, 2017, of their views with respect to what information, if any, should be redacted. To date, the parties have not filed a joint status report indicating such views. And so, the Court is reissuing its Memorandum Opinion and Order dated May 25, 2017, without redactions.

support for the development and use of the DHA's Military Health System Enterprise Architecture, after tiag failed to submit its quote to the point of contact designated by the DHA's Request for Quotes. The government has moved for judgment upon the administrative record, pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"). Plaintiff has also moved for judgment upon the administrative record, pursuant to RCFC 52.1. In addition, plaintiff has moved to compel the government to supplement the administrative record. For the reasons discussed below, the Court **GRANTS** the government's motion for judgment upon the administrative record; **DENIES** tiag's cross-motion for judgment upon the administrative record; and **DENIES** tiag's motion to compel.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

In this pre-award bid protest matter, tiag challenges the DHA's decision to exclude its quote from consideration for award of a contract to provide program management and technical support for the development and use of the DHA's Military Health System Enterprise Architecture in connection with Solicitation No. HT0011-17-R-0008 (the "RFQ"), after tiag failed to submit its quote to the point of contact designated by the RFQ. Specifically, tiag alleges that, by excluding its quote, the DHA: (1) arbitrarily disregarded acceptable quote submission procedures; (2) unreasonably reduced competition; and (3) did not comply with the FAR's government control exception. *See generally* Pl. Mot. As relief, tiag requests that the Court declare the DHA's decision to be arbitrary, capricious, and contrary to law, and that the Court enjoin the DHA from awarding any contract under the RFQ until tiag's quote is fully and fairly evaluated. Compl. at Requests for Relief. Alternatively, tiag requests that the Court prohibit the DHA from allowing contractors to perform work under any contracts that may be awarded under the RFQ, until tiag's quote is fully and fairly considered for award. *Id.*

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the administrative record ("AR"); plaintiff's complaint ("Compl."); defendant's motion for judgment upon the administrative record ("Def. Mot."); and plaintiff's opposition to the defendant's motion for judgment upon the administrative record and cross-motion for judgment upon the administrative record ("Pl. Mot."). Except where otherwise noted, all facts recited herein are undisputed.

1. **The Solicitation**

On January 13, 2017, the DHA issued the RFQ seeking quotes to provide support services for the DHA's Military Health System Enterprise Architecture. AR at 29, 44. The RFQ contemplates a single task order award to provide the requested program management and technical support services. *Id*.

Specifically relevant to this bid protest dispute, the RFQ contains quote submission instructions that instruct offerors to submit their quotes to the DHA "no later than February 13, 2017 at 12:00 PM Eastern Time." *Id.* at 45. Section 3.1 of the RFQ also designates the point of contact to receive quotes and provides:

> **3.1 POINT OF CONTACT (POC):** Due to the difficulties of receipt of mail through normal postal services, questions and quotes shall be sent via E-mail to the POC for this RFQ, Ms. Gina M. Walker at gina.m.walker2.cov@mail.mil and Mr. John A. Culmer at john.a.culmer.ctr@mail.mil. The Offeror is responsible for ensuring receipt of the POC.

*Id*. Lastly, Section 3.4 of the RFQ, entitled "Electronic Submission Requirements," provides that "[q]uotes shall be electronically submitted to the POC above," *i.e.* Ms. Gina M. Walker at gina.m.walker2.cov@mail.mil and Mr. John A. Culmer at john.a.culmer.ctr@mail.mil. *Id*.

The RFQ also contains provisions regarding nonconforming quotes. Specifically, the RFQ incorporates FAR 52.212-2 (Evaluation—Commercial Items), which provides, in pertinent part, that "[t]he Government will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered." *Id*. at 53. The RFQ also incorporates FAR 52.212-1, which provides, in relevant part that, "[o]ffers that fail to furnish required representations or information, or reject the terms and conditions of the solicitation may be excluded from consideration." *Id.* at 41.

2. **tiag's Quote Submission**

On February 13, 2017, tiag submitted its quote in response to the RFQ *via* the GSA Advantage eBUY Portal (the "eBUY" Portal). *Id*. at 312; *see also* Compl. ¶ 22; Compl. Ex. 2. It is undisputed in this case that tiag did not submit its quote *via* email to the point of contact designated by the RFQ. AR at 312; *see also* Compl. ¶¶ 6, 22; Def. Mot. at 3-4.

3

On March 7, 2017—more than three weeks after tiag submitted its quote *via* the eBUY Portal and after the RFQ had closed—the DHA's contracting specialist logged into the GSA Advantage system to locate offerors' missing Data Universal Numbering System ("DUNS") numbers and discovered that tiag had submitted a quote *via* the eBUY Portal.  AR at 310, 325-26; *see also* Def. Opp. at 1-2.

On March 14, 2017, the DHA notified tiag that the agency found tiag's quote to be "non-responsive to the requirements of the solicitation," because tiag "failed to submit their quote to the identified POCs and, instead, submitted their quote directly to the GSA Advantage website."  AR at 311, 325; *see also* Compl. ¶¶ 7, 24; Def. Mot. at 5.  On March 21, 2017, tiag requested reconsideration of the DHA's decision.  AR at 312; *see also* Compl. ¶ 26; Def. Mot. at 5.  In its request for reconsideration, tiag acknowledged that its quote had been "incorrectly submitted to [the] eBUY portal rather than the email addresses set forth in the Solicitation."  *Id*.  But, tiag argued that the DHA should, nevertheless, accept the quote based upon a Government Accountability Office ("GAO") decision that recommended acceptance of an improperly submitted proposal where, among other things, "the agency was contemporaneously aware of the proposal's submission."  *Id*.

On March 23, 2017, the DHA denied tiag's request for reconsideration.  AR at 325; *see also* Compl. ¶ 27; Def. Mot. at 5.  In the denial letter, the DHA stated that, "until March 7, 2017, the Agency had no information that tiag had attempted any submission on the e-Buy site."  *Id.*

On April 20, 2017, tiag commenced this action challenging the DHA's decision to exclude its quote from consideration for award.  *See generally* Compl.

### B. Procedural History

On April 20, 2017, tiag filed its complaint in this bid protest matter, as well as a motion for a preliminary injunction and a memorandum in support thereof.  *See generally id.*; Pl. Mot. for Prelim. Inj.; Pl. Prelim. Inj. Mem.  On April 20, 2017, plaintiff also filed a motion for entry of a protective order.  *See generally* Pl. Mot. for Prot. Order.  The Court granted plaintiff's motion and entered a Protective Order on April 24, 2017.  *See* Protective Order, dated April 24, 2017.  During the initial status conference held on April 21, 2017, tiag advised that it would hold

4

its motion for a preliminary injunction in abeyance pending a resolution of the merits of this case.

On April 28, 2017, the government filed the administrative record. On April 28, 2017, the government also filed a motion for judgment upon the administrative record. *See generally* Def. Mot.

On May 1, 2017, tiag filed a motion to compel the government to supplement the administrative record and to extend the time to respond to the government's motion for judgment upon the administrative record. Pl. Mot. to Compel. On May 1, 2017, the government also filed an opposition to tiag's motion to compel. *See generally* Def. Opp. On May 2, 2017, the Court held a telephonic hearing on tiag's motion to compel and the Court issued an oral decision denying tiag's motion. *See generally* Tr., dated May 2, 2017.

On May 3, 2017, tiag filed an opposition to the government's motion for judgment upon the administrative record and a cross-motion for judgment upon the administrative record. *See generally* Pl. Mot. On May 5, 2017, the government filed a reply in support of its motion for judgment upon the administrative record and a response and opposition to tiag's cross-motion for judgment upon the administrative record. *See generally* Def. Reply. On May 9, 2017, tiag filed a reply in support of its cross-motion for judgment upon the administrative record. *See generally* Pl. Reply.

On May 15, 2017, the Court held oral argument on the parties' cross-motions. *See generally* Tr., dated May 15, 2017. During that hearing, the Court issued an oral decision granting the government's motion for judgment upon the administrative record and denying tiag's motion for judgment upon the administrative record. *Id*. Consistent with the Court's oral decision, the Court issues this written decision resolving the parties' cross-motions.

### III. LEGAL STANDARDS

#### A. Bid Protest Jurisdiction

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed

5

procurement." 28 U.S.C. § 1491(b)(1) (2001). This Court reviews agency actions in bid protest matters under the "arbitrary and capricious" standard under the Administrative Procedure Act (the "APA"). *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the Administrative Procedure Act). And so, under this standard, an award may be set aside if "'(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). In this regard, the Federal Circuit has explained that:

> When a challenge is brought on the first ground, the test is whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis. When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.

*Id*. at 1351 (internal citations omitted).

In reviewing an agency's procurement decision, the Court also recognizes that the agency's decision is entitled to a "presumption of regularity." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (citations omitted). In addition, the Court should not substitute its judgment for that of the agency. *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997). And so, "'[t]he protestor must show, by a preponderance of the evidence, that the agency's actions were either without a reasonable basis or in violation of applicable procurement law.'" *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 648 (2003) (quoting *Info. Tech. & Applications Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003)).

This standard "is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As long as there is "a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion . . . ." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (citation omitted). But, if "the agency entirely fail[s] to consider an important aspect of the problem [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency," then the resulting action lacks a rational basis and, therefore, is defined as

procurement." 28 U.S.C. § 1491(b)(1) (2001). This Court reviews agency actions in bid protest matters under the "arbitrary and capricious" standard under the Administrative Procedure Act (the "APA"). *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the Administrative Procedure Act). And so, under this standard, an award may be set aside if "'(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). In this regard, the Federal Circuit has explained that:

> When a challenge is brought on the first ground, the test is whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis. When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.

*Id*. at 1351 (internal citations omitted).

In reviewing an agency's procurement decision, the Court also recognizes that the agency's decision is entitled to a "presumption of regularity." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (citations omitted). In addition, the Court should not substitute its judgment for that of the agency. *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997). And so, "'[t]he protestor must show, by a preponderance of the evidence, that the agency's actions were either without a reasonable basis or in violation of applicable procurement law.'" *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 648 (2003) (quoting *Info. Tech. & Applications Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003)).

This standard "is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As long as there is "a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion . . . ." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (citation omitted). But, if "the agency entirely fail[s] to consider an important aspect of the problem [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency," then the resulting action lacks a rational basis and, therefore, is defined as

"arbitrary and capricious." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (internal quotation marks omitted).

      **B.**      **Judgment Upon The Administrative Record**

Generally, Rule 52.1 limits this Court's review of an agency's procurement decision to the administrative record. RCFC 52.1; *see Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) ("[T]he focal point for judicial review should be the administrative record already in existence."). And so, unlike a summary judgment motion brought pursuant to Rule 56, "the existence of genuine issues of material fact does not preclude judgment upon the administrative record" under Rule 52.1. *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242 (2011) (citations omitted); RCFC 56. Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006).

      **C.**      **Supplementing The Administrative Record**

The United States Court of Appeals for the Federal Circuit held in *Axiom Resource Management* that the "parties' ability to supplement the administrative record is limited," and that the administrative record should only be supplemented "if the existing record is insufficient to permit meaningful review consistent with the APA." *Axiom*, 564 F.3d at 1379-81; *see also Caddell Constr. Co., Inc. v. United States*, 111 Fed. Cl. 49, 93 (2013). The Supreme Court has also held in *Camp v. Pitts* that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). This focus is maintained in order to prevent courts from using new evidence to "convert the arbitrary and capricious standard into effectively de novo review." *L-3 Commc'ns EOTech, Inc. v. United States*, 87 Fed. Cl. 656, 671 (2009) (citations omitted).

This Court has interpreted the Federal Circuit's directive in *Axiom* to mean that supplementation of the administrative record is permitted to correct mistakes and fill gaps, but is not permitted when the documents proffered are unnecessary for an effective review of the government's procurement decision. *Id.* at 672. And so, this Court has precluded

supplementation of the administrative record with declarations that contain "post-hoc contentions of fact and argument." *Id*.

      **D.**      **Injunctive Relief**

Lastly, under its bid protest jurisdiction, the Court "may award any relief [it] considers proper, including declaratory and injunctive relief . . . ." 28 U.S.C. § 1491(b)(2); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). In deciding whether to issue a permanent injunction, the Court "considers: (1) whether . . . the plaintiff has succeeded upon the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing *Amoco Prod. Co. v. Vill. of Gambell, Alaska,* 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.")); *see also Centech Grp., Inc.*, 554 F.3d at 1037. In this regard, the United States Court of Appeals for the Federal Circuit has held that:

> No one factor, taken individually, is necessarily dispositive. If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others. If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.

*FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (citations omitted); *Cf. Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*, 357 F.3d 1319, 1325 (Fed. Cir. 2004) (finding that a plaintiff who cannot demonstrate likely success upon the merits cannot prevail upon its motion for preliminary injunctive relief). But, this Court has found success upon the merits to be "the most important factor for a court to consider when deciding whether to issue injunctive relief." *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 369 (2012) (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1312 (Fed. Cir. 2007)); *Cf. Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 353 (2012) ("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well.") (citations omitted)). And so, the Federal Circuit has also

held that a party that cannot demonstrate a likelihood of success upon the merits cannot prevail upon a claim for injunctive relief. *Nat'l Steel Car, Ltd.*, 357 F.3d at 1325. (addressing a motion for preliminary injunction).

## IV.     LEGAL ANALYSIS

In its motion for judgment upon the administrative record, tiag challenges the DHA's decision to exclude its quote from consideration for the award of a contract for program management and technical support for the development and use of the DHA's Military Health System Enterprise Architecture, after tiag failed to submit its quote to the point of contact designated by the RFQ. *See generally* Pl. Mot. The government argues that the administrative record in this matter shows that the DHA's decision to exclude plaintiff's quote from consideration for award was reasonable and in accordance with the requirements of RFQ. *See generally* Def. Mot. For the reasons discussed below, the Court agrees. And so, the Court **GRANTS** the government's motion for judgment upon the administrative record and **DENIES** tiag's cross-motion for judgment upon the administrative record. In addition, because the administrative record before the Court is sufficient for meaningful judicial review of tiag's claim, the Court also **DENIES** tiag's motion to compel supplementation of the administrative record.

### A.     The Court Must Deny Plaintiff's Motion To Compel Supplementation Of The Administrative Record

As a preliminary matter, the Court must deny tiag's motion to compel the government to supplement the administrative record in this matter with certain email records and evaluation documents associated with tiag's quote, because these documents would not correct mistakes or fill any gaps in the existing administrative record. *See generally* Pl. Mot. to Compel. It is well-established that the "focal point" of the Court's review of the DHA's decision to exclude tiag's quote "'should be the administrative record already in existence, not some new record made initially in the reviewing court.'" *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1379 (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). And so, the administrative record should only be supplemented in this case to correct mistakes and fill gaps, "if the existing record is insufficient to permit meaningful review consistent with the APA." *Id*. at 1379-81; *see also L-3 Commc'ns EOTech*, 87 Fed. Cl. at 672.

9

In its motion to compel, tiag seeks to compel the government to supplement the administrative record with any email notifications generated by the eBUY Portal that the DHA may have received regarding the submission of tiag's quote. Pl. Mot. to Compel at 4. Plaintiff argues that any such notifications could indicate when the DHA became aware that tiag submitted its quote *via* the eBUY Portal. *Id.* at 5. Plaintiff also seeks to compel the government to supplement the administrative record with any documents related to the DHA's evaluation of its quote. *Id.* at 3-5.

Supplementation of the administrative record with these documents is not warranted. First, to the extent that such documents exist, any email notifications from the eBUY Portal to DHA personnel would not aide the Court by filling gaps or correcting mistakes in the administrative record with respect to when the DHA became aware of tiag's quote. Indeed, there is ample evidence in the administrative record currently before the Court to demonstrate that the DHA first became aware of the fact that tiag submitted its quote *via* the eBUY Portal on March 7, 2017. *See generally* AR at 310, 325-26; Tr., dated May 2, 2017, at 27: 3-7. For example, the administrative record shows that the DHA's contracting specialist discovered that tiag had submitted a quote *via* the eBUY Portal on March 7, 2017, after logging onto the GSA Advantage system. AR at 310, 326. The administrative record also shows that, on March 23, 2017, the DHA informed tiag that the agency did not become aware of this quote "until March 7, 2017." *Id.* at 325; *see also* Compl. ¶¶ 7, 24; Def. Mot. at 5.

In addition, as the government explained during the May 2, 2017 hearing on plaintiff's motion to compel:

> [Even] if such a notification were received by the agency, [the notification] would only say the number of quotes that were received. It would not name the company.

Tr. at 24: 22-25. And so, to the extent that the email records that tiag seeks exist, such documents would not correct, or fill a gap in, the administrative record. *L-3 Commc'ns EOTech, Inc.*, 87 Fed. Cl. at 672; *Citizens to Pres. Overton Park, Inc.*, 401 U.S. at 420.

Plaintiff's request to compel the government to supplement the administrative record with documents regarding the DHA's evaluation of tiag's quote is similarly unfounded. It is without dispute that, at the time the DHA reached its decision to exclude tiag's quote, the agency

had not evaluated tiag's quote. *See generally* Pl. Mot. to Compel; Def. Opp. Although the government acknowledges that the DHA subsequently—and, apparently, mistakenly—conducted a "non-final draft technical evaluation" of tiag's quote beginning on April 10, 2017, this evaluation occurred after the agency reached the decision to exclude the quote from consideration for award. Def. Opp. at 5. Given this, any materials related to the DHA's evaluation of tiag's quote should not be a part of the administrative record in this matter. *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1379 (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). And so, the Court must deny plaintiff's motion to compel the government to supplement the administrative record.

> B. The Decision To Exclude tiag's Quote Was Reasonable

The Court reviews the DHA's decision to exclude tiag's quote from consideration for award under the arbitrary and capricious standard. *See* 28 U.S.C. § 1491(b)(4); *Citizens to Pres. Overton Park*, 401 U.S. at 415; *Cincom Sys., Inc.*, 37 Fed. Cl. at 672. For the reasons discussed below, the administrative record in this matter shows that the DHA's decision was reasonable and in accordance with the requirements of the RFQ.

> 1. Plaintiff's Quote Did Not Conform With The Terms Of The RFQ

First, the administrative record in this case shows that the DHA's decision to exclude tiag's quote from consideration for award was in accordance with the plain terms of the RFQ, because the RFQ requires that tiag submit its quote to the point of contact designated by the RFQ. In this regard, section 3.1 of the RFQ provides that "quotes shall be sent via E-mail to the POC for this RFQ, Ms. Gina M. Walker at gina.m.walker2.civ.@mail.mil and Mr. John A. Culmer at john.a.culmer.ctr@mail.mil." AR at 45. The RFQ also provides that "[t]he Offeror is responsible for ensuring receipt by the POC." *Id*.

In addition, the RFQ incorporates FAR 52.212-2 and FAR 52.212-1, which provide, respectively, that the government will award a contract to an offeror whose offer conforms to the solicitation and that a non-conforming proposal may be excluded from consideration. *Id.* at 41, 53. And so, the terms of the RFQ plainly require that tiag—and other offerors—submit responsive quotes *via* e-mail to the point of contact specified by the RFQ and that the DHA may exclude from consideration any quotes that fail to conform with this requirement.

In this case, it is undisputed that tiag failed to submit its quote to the point of contact designated by the RFQ. *Id.* at 312; Compl. ¶¶ 6, 22. There is also no dispute that tiag submitted its quote *via* the eBUY Portal. *Id*. As a result, the record evidence shows that the DHA reasonably determined that tiag's proposal did not conform with the requirements of the RFQ and that the agency appropriately excluded tiag's proposal from consideration for award.

Plaintiff's argument that the DHA should not have excluded its quote because the eBUY Portal is "a valid methodology for submission" for this solicitation is also belied by the plain language of the RFQ. Pl. Mot. at 14; Compl. ¶ 1. While the RFQ does require that responsive quotes be submitted electronically, rather than *via* U.S. mail, the RFQ also clearly states that "quotes shall be sent via E-mail to the POC for this RFQ. AR at 45. And so, there can be no genuine dispute here that tiag failed to conform with the plain requirements of the RFQ and, as a result, the DHA reasonably decided to exclude tiag's quote.

### 2. Plaintiff's Reliance Upon *AECOM* Is Misplaced

Plaintiff's reliance upon the GAO's decision in AECOM *Technical Services, Inc.*, to argue that the DHA unreasonably reduced competition by excluding its quote from consideration, is also misplaced. Pl. Mot. at 14-19; *AECOM Technical Services, Inc.*, B-411862, 2015 WL 7171488, at *1 (2015); *see also* Compl. ¶¶ 26, 38-39. In *AECOM*, the government's contracting personnel discovered that an offeror submitted a proposal to the incorrect location one day before the deadline for the receipt of proposals and the government advised that offeror of the error on the same day. *AECOM Technical Services, Inc.*, 2015 WL 7171488, at *1. Based upon these factual circumstances, the GAO held that the misdirected proposal should be accepted by the government because, among other things, the cognizant government contracting personnel were actually and contemporaneously aware of the offeror's proposal at the time of the submission to the incorrect location. *Id*. at *4 (Holding the record shows that a complete copy of a proposal was submitted to and contemporaneously received by the cognizant contracting personnel before the deadline for proposal submissions.).

But here, the administrative record demonstrates that the DHA's Contracting Officer was not actually, contemporaneously aware of tiag's quote submission at the time plaintiff submitted its quote *via* the eBUY Portal. AR at 310, 325-26. It is undisputed that tiag submitted its quote *via* the eBUY portal on February 13, 2017. *Id*. at 312; *see also* Compl. ¶¶ 6,22; Compl. Ex. 2;

Def. Mot. at 3-4. But, the administrative record shows that the DHA did not become aware of tiag's quote until March 7, 2017—several weeks later—when the agency's contracting specialist logged into the GSA Advantage system. AR at 310, 325-326.

The fact that the DHA first became aware of tiag's quote on March 7, 2017, is also reaffirmed in the memoranda for the record prepared by the DHA's Contracting Officer on March 14, 2017 and March 23, 2017, which state that the agency discovered that tiag had submitted a quote *via* the eBUY Portal on March 7, 2017. *Id*. In addition, the record evidence also shows that the DHA's contracting officer informed tiag that "until March 7, 2017, the Agency had no information that tiag had attempted any submission on the e-Buy site," in a letter dated March 23, 2017. *Id*. at 325.

Given this evidence, the administrative record demonstrates that the DHA did not have actual, contemporaneous knowledge of tiag's quote submission *via* the eBUY Portal. And so, tiag's claim that that the DHA unreasonably reduced competition by excluding its quote from consideration is unsubstantiated by the administrative record.

### 3. Plaintiff May Not Rely Upon The Government Control Exception

The record evidence similarly does not substantiate tiag's claim that the DHA should have accepted its quote under the FAR's government control exception. Pl. Mot. at 19-22; *see also* Compl. ¶¶ 44-46. Under the government control exception, an untimely offer may be considered for award if: (1) it is received before an award is made; (2) the contracting officer determines that accepting such a late offer would not unduly delay the acquisition; and (3) the offer was received at the government installation designated for receipt of offers and was under the government's control prior to the deadline for receipt of offers. *See* 48 C.F.R. § 52.215-1(c)(3)(ii)(A) (2017). And so, this exception allows the government to accept and consider untimely offers under certain circumstances. *Id*.

As the government correctly points out in its motion for judgment upon the administrative record, the government control exception does not apply here, because tiag's quote was timely submitted. Def. Mot. at 3-4, 15; AR at 312; *see also* Pl. Mot. at 2-4, 7, 11, 13-14, 18-19, 21-22; Compl. ¶¶ 6, 22; *Johnson Controls Gov't Sys, LLC v. United States*, 125 Fed. Cl. 289 (2016); *Fed. Acquisition Servs Team, LLC v. United States*, 124 Fed. Cl. 690 (2016).

More importantly, even if the Court were to apply the government control exception to the facts of this case, the administrative record also makes clear that tiag cannot satisfy the requirements of this exception. The record evidence in this case shows that tiag's quote was not "received at a government installation designated for the receipt of offers," as required by the government control exception. § 52.215-1(c)(3)(ii)(A). Rather, as discussed above, tiag submitted its quote *via* the GSA's eBUY Portal, and not to the point of contact designated by the RFQ or to any contracting officials within the DHA. AR at 45, 310-12, 325-26; *see also* Compl. ¶¶ 6, 22; Compl. Ex. 2. And so, the government control exception cannot revive tiag's claim.

### C. Plaintiff Is Not Entitled To Injunctive Relief

As a final matter, tiag has not demonstrated an entitlement to the injunctive relief that it seeks in this case, because tiag has not prevailed upon the merits of its claim. Plaintiff requests that the Court declare the DHA's decision to exclude its quote from consideration for award to be arbitrary, capricious and contrary to law and that the Court enjoin the DHA from awarding any contract under the RFQ until tiag's quote is fully and fairly evaluated and considered for award. Compl. at Requests for Relief. But, where, as here, the record evidence demonstrates that a plaintiff has not succeeded upon the merits of its claims, tiag cannot prevail upon a claim for such injunctive relief. *Cf. Altana Pharma AG v. Teva Pharmaceuticals USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009) (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)) ("Although the factors are not applied mechanically, a movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction" or a temporary restraining order); *Nat'l Steel Car, Ltd.*, 357 F.3d at 1325 (finding that a party that cannot demonstrate likely success upon the merits cannot prevail upon its motion for preliminary injunctive relief). And so, the Court must also deny tiag's request for injunctive relief. *Cf. Altana Pharma AG*, 566 F.3d at 1005; *Nat'l Steel Car, Ltd.*, 357 F.3d at 1325.

### V. CONCLUSION

In sum, tiag's challenge to the DHA's decision to exclude its quote from consideration for award is simply unsupported by the plain terms of the RFQ and the record evidence in this case. Indeed, the record evidence shows that the DHA reasonably decided to exclude tiag's quote after tiag failed to submit the quote in the manner required under the express terms of the

RFQ.  The record evidence also shows that the DHA's decision to exclude tiag's quote is in accordance with the terms of the RFQ and applicable law.  Lastly, a review of the administrative record currently before the Court demonstrates that this record is sufficient for meaning judicial review of tiag's claim.

And so, for all of the foregoing reasons, the Court:

1. **GRANTS** the government's motion for judgment upon the administrative record;

2. **DENIES** tiag's cross-motion for judgment upon the administrative record; and

3. **DENIES** tiag's motion to compel.

Judgment shall be entered accordingly.

Each party shall bear their own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on April 24, 2017.  This Memorandum Opinion and Order shall therefore be filed under seal.  The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication.

The parties shall **FILE** a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed redaction on or before **June 26, 2017**.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby  
LYDIA KAY GRIGGSBY  
Judge